# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| JEROME LEE BLAIR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 5:11-cv-02642-KOB-MHH |
| | ) |
| DETENTION OFFICER | ) |
| SULLIVAN, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Plaintiff, Jerome Lee Blair, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983. In his complaint, Mr. Blair alleges that rights, privileges, or immunities afforded him under the Constitution or laws of the United States were abridged during his incarceration at the Madison County Detention Facility in Huntsville, Alabama. Mr. Blair has been released from custody. For the reasons stated below, this action is due to be dismissed pursuant to 42 U.S.C. § 1997e(a) because Mr. Blair failed to exhaust his administrative remedies. Furthermore, Mr. Blair's request for injunctive relief is moot.

## I. PROCEDURAL HISTORY

Mr. Blair initiated this action on February 11, 2011. (Doc. 2, p. 3). He names

as defendants Detention Officers Sullivan, Long, and McCall. (Doc. 2, p. 1). On November 28, 2011, the court ordered the defendants to file a Special Report. In its order, the court advised Mr. Blair that after he received a copy of the defendants' Special Report, he should file counter-affidavits if he wished to rebut the factual matters in the defendants' Special Report. (Doc. 15).

On March 9, 2012, defendants filed their Special Report. (Doc. 22). The court notified Mr. Blair that the court would construe the defendants' Special Report as a motion for summary judgment, and he had twenty days to respond by filing affidavits and other material, and advised him of the consequences of default or failure to comply with Fed. R. Civ. P. 56. (Doc. 23). Mr. Blair did not file a response.

## II. SUMMARY JUDGMENT STANDARD

In considering a motion for summary judgment, the court must determine whether the moving party is entitled to judgment as a matter of law. Summary judgment may be granted only if no genuine issues of material fact are present, and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56. In making that assessment, the court must view the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000).

Initially, a defendant must establish his *prima facie* entitlement to summary

judgment by showing no genuine issues of material fact exist and that he should prevail as a matter of law. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1989). If the defendant does so, then the plaintiff, who carries the ultimate burden of proving his action, must raise disputed factual issues that a trier of fact must resolve. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532-33 (11th Cir. 1990).

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prime facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the [plaintiff's] case necessarily renders all other facts immaterial."

*Bennett*, 898 F.2d at 1532 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

The court must consider "specific facts" pled in a *pro se* plaintiff's sworn complaint when evaluating a motion for summary judgment. *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986).

## III.  SUMMARY JUDGMENT FACTS[1]

Mr. Blair was incarcerated in the Madison County Detention Facility at various times between 2007 and 2010. (Doc. 22-1, pp. 5-38, App. A at A1-A34). Each time

---

[1] Applying the foregoing summary judgment standard, the following facts appear to be undisputed or, if disputed, are presented in the light most favorable to Mr. Blair. Factual disputes raised by a particular defendant are described in footnotes.

he was booked into the Detention Facility, Mr. Blair indicated during his medical screening that he suffers from periodic seizure episodes. (Doc. 22-1, pp. 40-42, 44-60, App. B at B1-B3, B5-B21). Mr. Blair also complained of throat pain and an inability to speak on occasion. (Doc. 22-1, pp. 80, 88, 93, 101, App. C at C19, C27, C32, C40).

October 13, 2010 Altercation with Officers Sullivan, Long, and McCall

On October 12, 2010, Mr. Blair was booked into the Madison County Detention Facility on first degree robbery charges. (Doc. 22-1, p. 14, App. A at A10). The following day, as Officer DeOnte' Sullivan moved inmates to their appropriate housing units in the Detention Facility, he saw and heard Mr. Blair yelling to other inmates through the glass door of Unit F. (Doc. 22, p. 5, ¶¶ 5-6). The area around the glass door of Unit F is restricted because inmates in this area can see inmates in other housing units. (*Id*. at ¶ 7). Officer Sullivan began yelling and cursing at Mr. Blair and other inmates to back away from the glass door. Mr. Blair responded, "Yes, sir," and began moving away.[2] (Doc. 2, p.5).

Officer Sullivan pointed to Mr. Blair and told him to stand where he was.

---

[2] Officer Sullivan asserts that he gave Mr. Blair multiple orders over the Detention Facility's intercom system to stop yelling through the door and to leave the restricted area, but Mr. Blair refused to comply. (Doc. 22-2, Sullivan Aff. ¶¶ 9, 11). Officer Sullivan went to open the door and again ordered Mr. Blair to stop yelling and to leave the restricted area. (*Id*. ¶ 12). Officer Sullivan contends that when he opened the door, Mr. Blair stated, "'I'm a grown ass man and don't have to go anywhere.'" (*Id*. ¶ 13).

Officer Sullivan came back about five minutes later and began yelling and cursing at Mr. Blair. Mr. Blair walked away from Officer Sullivan, but Sullivan grabbed Mr. Blair by his shirt and pulled him to the door where Officer Joy McCall was standing. Officer McCall tried unsuccessfully to stun Mr. Blair with her Taser. Officer James Long swung the door open, and Mr. Blair fell to the ground. Officer Long held down Mr. Blair's legs, and Officer Sullivan began hitting Mr. Blair. Mr. Blair claims he "start[ed] to black out."[3]  (Doc. 2, p. 5).

---

[3] Officer Sullivan reports that Mr. Blair approached him, grabbed him around his waist, and lifted him off the ground. (Doc. 22-2, Sullivan Aff. ¶¶ 14-15). Officer Sullivan contends that he began struggling with Mr. Blair to break free. (*Id*. ¶ 16). According to Officer Sullivan, Officer McCall came to assist him, and he eventually was able to wrestle Mr. Blair to the ground. *Id*. ¶¶ 18-20). Officer Sullivan argues that he only used the amount of force necessary to overcome Mr. Blair's attack. (*Id*. ¶ 23).

Officer Joy McCall contends that on October 13, 2010, at approximately 12:55 p.m., she was in the Detention Facility in the control booth near Unit F. (Doc. 22-3, McCall Aff. ¶ 5). She heard Officer Sullivan order Mr. Blair to stop yelling through the door to Unit F. (*Id*. ¶ 6). Officer McCall states that a few moments later, she saw Mr. Blair approach Officer Sullivan near the door to Unit F, grab Officer Sullivan, and lift Officer Sullivan off the ground. (Doc. 22-3, McCall Aff. ¶ 7). She states that she sent an alert over the Detention Facility's radio system, asking for assistance for Officer Sullivan, and she went to assist him. (*Id*. ¶ 8).

While approaching Mr. Blair and Officer Sullivan, Officer McCall claims she repeatedly ordered Mr. Blair to stop resisting and to lie on the ground. (*Id*. ¶ 9). When he did not, Officer McCall removed the projectile prongs from her Taser and stunned Mr. Blair once on the right side of his abdomen. (*Id*.). Officer Sullivan subsequently wrestled Mr. Blair to the ground. (*Id*. ¶ 10). After Mr. Blair was on the ground, Officers Shawn Maloney and James Long helped restrain Mr. Blair while Officer McCall placed handcuffs on him. (Doc. 22-3, McCall Aff. ¶ 11).

Officer James Long states that on October 13, 2010, he was in the Detention Facility in Unit G with Officer Shawn Maloney assisting in inmate housing moves. (Doc. 22-4, Long Aff. ¶ 5). While he was in Unit G, he heard a commotion in Unit F and heard inmates in Unit F yelling "fight." (*Id*. ¶ 6). When Officer Long arrived in Unit F, he saw Officer Sullivan on the ground on top of Mr. Blair struggling to gain control of him. (*Id*. ¶ 8). Officer Long gained control of

Once Mr. Blair was restrained, Officer Sullivan escorted him to a multi-purpose room for medical treatment. (Doc. 22-2, Sullivan Aff. ¶ 24). Nurse Gladys Rogers noted a "small opened area" under Mr. Blair's right eye and a one inch opened area on Mr. Blair's left ear. Nurse Rogers cleaned the areas and applied Steri-Strip bandages. (Doc. 22-1, p. 67, App. C at C6). Mr. Blair requested medicine for pain, but the defendants quickly put him in lock-up without providing pain medication. (Doc. 2, p. 5). Mr. Blair claims he has not been able to speak since the alleged assault. (Doc. 2, p. 6).

One day after the altercation, on October 14, 2010, Mr. Blair suffered a seizure. A physician examined and treated Mr. Blair. (Doc. 22-1, p. 69, App. C at C8).

On February 17, 2011, Mr. Blair filed an Inmate Grievance Form, claiming that Officer Sullivan "beat [him] up." Mr. Blair stated that he feared for his life and asked to be kept away from Officer Sullivan. Mr. Blair did not allege in his grievance that Officers McCall or Long used excessive force against him. (Doc. 22-1, p. 83, App. C at C22).

Sergeant Kelly Dunn investigated Mr. Blair's grievance, determined that it was

---

Mr. Blair's legs while Officer Maloney helped gain control of Mr. Blair's upper body and arms. (*Id*. ¶¶ 9-10).

Defendants deny using any force against Mr. Blair once he was restrained. (Doc. 22-2, Sullivan Aff. ¶¶ 12, 22; Doc. 22-4, Long Aff. ¶ 12). They also deny kicking, punching, or hitting Mr. Blair. (Doc. 22-2, Sullivan Aff. ¶¶ 15, 32; Doc. 22-4, Long Aff. ¶ 17).

unfounded, and denied Mr. Blair's request on February 17, 2011. (Doc. 22-1, p. 83, App. C at C22; Doc. 22-5, p. 2, Dunn Aff. ¶¶ 11-12).  On February 18, 2011, Lieutenant Setzer reviewed Sergeant Dunn's response to Mr. Blair's grievance. (Doc. 22-1, p. 83, App. C at C22).

If an inmate wishes to appeal the resolution of his grievance, he has "five (5) working days to file an appeal with the Sheriff." (Doc. 22-1, p. 125, App. D at D2). The Sheriff will review the resolution and "will have ten (10) working days to respond to the inmate's appeal." (*Id.*).  According to Detention Officer Robin Baker, the custodian of inmate records for the Sheriff of Madison County, Alabama, "there are no records whatsoever showing that Jerome Lee Blair made any effort to appeal the denial of his February 17, 2011 grievance request to the Sheriff of Madison County, Alabama." (Doc. 22-1, pp. 1-3, Baker Aff., ¶¶ 4, 12).

Medical Treatment

Mr. Blair alleges broadly that he did not receive adequate medical care while he was incarcerated at the Madison County Detention Facility.  In his complaint, he contends:

> I filled out several request forms to see the doctor about my medications. I also filled out grievance forms to get my medications but never did at all until one day.  I went into a seizure (a conversation [sic] disorder) which called me into losing my speech, and still I have not been seen about it yet.

> Every time I put a sick-call clip in to be seen about my eye and about the headaches that I get, I've been denied medical treatment. I have no speech at all. I had a seizure after they beat me up [and] I have not been able to speak a word since. I have to write on paper to communicate.

(Doc. 2, p. 6).

The record demonstrates that on November 4, 2010 and November 8, 2010, Mr. Blair submitted Sick Call Request Forms to obtain prescriptions. The medical staff filled those prescriptions. (Doc. 22-1, pp.70-71, App. C at C9-C10).

On November 28, 2010, Mr. Blair complained that his lip was swollen and he had a headache. (Doc. 22-1, pp. 72-73, App. C at C11-C12). On the same date, medical staff examined Mr. Blair and gave him a prescription for Benadryl. (*Id.* at C12).

On December 4, 2010, Mr. Blair complained of pain in his right eye and vision problems. (*Id.* at C13). On December 6, 2010, medical staff examined Mr. Blair and ordered that he be seen by a doctor. (*Id.* at C14).

On December 14, 2010, Mr. Blair complained that he could not talk and that something was wrong with this throat. (Doc. 22-1, p. 76, App. C at C15). Medical staff noted on Mr. Blair's Sick Call Request Form that he was to see the doctor on December 29, 2010. (*Id.*).

On December 27, 2010, Mr. Blair suffered a seizure. (*Id.* at p. 77, C16).

Medical staff assessed Mr. Blair and moved him to the medical facility for observation. (*Id*. at pp. 78-79, C17-C18). Medical staff noted again that Mr. Blair was to see the doctor on December 29, 2010. (*Id*. at p. 79, C18).

On February 14, 2011, Mr. Blair complained that his throat hurt and that he had been without his voice for three months. (Doc. 22-1, p. 81, App. C at C20). Mr. Blair's medical records indicate that he was to see the doctor on February 17, 2011. (*Id*.).

On July 4, 2011, Mr. Blair stated that his teeth were hurting. (*Id*. at p. 82, C21). He was placed on a list to see the dentist. (*Id*.).

On this record, the court considers the defendants' motion for summary judgment.

## IV. <u>DISCUSSION</u>

### A. <u>Exhaustion of Administrative Remedies</u>.

Defendants argue that the court should dismiss Mr. Blair's claims because he did not exhaust his administrative remedies. In *Bryant v. Rich*, the Eleventh Circuit Court of Appeals held that the exhaustion defense "is not ordinarily the proper subject for a summary judgment; instead, it 'should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment.'" *Bryant v. Rich*, 530 F.3d 1368, 1375 (11th Cir. 2008) (quoting *Ritza v. Int'l Longshoremen's &*

*Warehousemen's Union*, 837 F.2d 365, 368-69 (9th Cir. 1988)). Therefore, the court will consider whether Mr. Blair properly exhausted his administrative remedies using the standard set forth in *Bryant*.

*Bryant* instructs that, in evaluating an exhaustion defense, a court first "looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (citing *Bryant*, 530 F.3d at 1373-74). "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.*

The exhaustion requirement is statutory. In 1996, Congress enacted the Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (1996) ("PLRA") in an attempt to control a flood of prisoner lawsuits. Title 42 U.S.C. § 1997e(a), as amended by the PLRA, provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Under Section 1997e, exhaustion of administrative remedies is mandatory even if the applicable exhaustion procedures do not meet "minimum acceptable standards" of fairness; courts may not excuse exhaustion even when it

would be "appropriate and in the interest of justice." *Booth v. Churner*, 532 U.S. 731, 740, n.5 (2001).

Mr. Blair's excessive force allegations concern the conditions under which he was confined at the Madison County Detention Facility. The Detention Facility has an Inmate Grievance Policy to address prisoner complaints about the facility's conditions. Under the policy, an inmate who has a grievance must ask a detention officer for a "Grievance Form." (Doc. 22-1, pp.124-125, App. D at D1-D2). The inmate must complete the form and include complete details of the alleged grievance. When an inmate submits a completed Grievance Form, a detention officer transmits the form to the Shift Supervisor on duty. Based on the nature of the grievance, either the Shift Supervisor, the Division Commander, or the next officer in command must examine the grievance and note in the space provided on the form the Facility's response to the grievance. A written record of the grievance resolution must be provided to the complaining inmate within 30 days from the date on which he submitted his grievance form. If an inmate is not satisfied with the result, he has "five (5) working days to file an appeal with the Sheriff." The Sheriff must review the disposition of the grievance and respond to the inmate's appeal within ten working days. (*Id.*).

On February 17, 2011, Mr. Blair filed an Inmate Grievance Form, complaining

that Officer Sullivan "beat [him] up." (Doc. 22-1, p. 83, App. C at C22). Mr. Blair stated that he feared for his life, and he asked to be kept away from Officer Sullivan. Sergeant Kelly Dunn investigated Mr. Blair's grievance, determined that it was unfounded, and denied Mr. Blair's request on February 17, 2011. On February 18, 2011, Lieutenant Setzer approved Sergeant Dunn's resolution of Mr. Blair's grievance. (*Id*.).

Mr. Blair did not appeal the denial of his grievance request to the Madison County Sheriff. Therefore, Mr. Blair did not exhaust his grievance with respect to Officer Sullivan. Mr. Blair did not file a grievance concerning Officer Sullivan's co-defendants, Officers Long and McCall.

Because Mr. Blair failed to fully utilize the Madison County Detention Center's Inmate Grievance Policy concerning his complaints against Officers Sullivan, Long, and McCall, his Eighth Amendment excessive force claims against the defendants are due to be dismissed without prejudice pursuant to 42 U.S.C. § 1997e(a).

**B.    Injunctive Relief.**

Even if Mr. Blair had exhausted his administrative remedies, the court still would dismiss his claims because his requests for relief are moot. Mr. Blair seeks only injunctive relief regarding his claims against Officers Sullivan, Long, and

McCall. Specifically, Mr. Blair asks the court to suspend the defendants and to enter a restraining order against them. (Doc. 2, p. 3). On September 27, 2011, Mr. Blair notified the court that he has been released from the Madison County Detention Facility. (Doc. 11). "Absent class certification, an inmate's claim for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once the inmate has been transferred." *Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985). "Past exposure to illegal conduct does not in itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing, present injury or real and immediate threat of repeated injury." *Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985). Because Mr. Blair no longer is incarcerated at the Madison County Detention Facility and has alleged no present injury or immediate threat of repeated injury, his request for injunctive relief is moot.

In addition to requesting injunctive relief in connection with his claims against Officers Sullivan, Long, and McCall, in the "Relief" section of his complaint, Mr. Blair states: "I want a [lawsuit] against Sheriff Doughtre and the Madison County Jail and the medical staff." (Doc. 2, p. 3). Mr. Blair does not name those individuals or the Madison County Jail as parties to this action. (Doc. 2, p. 1). Although he alleges in general terms that the medical care that he received while he was incarcerated was unsatisfactory, Mr. Blair offers no specific allegations concerning Sheriff Doughtre,

the Madison County Jail, or "the medical staff." If Mr. Blair wishes to pursue legal claims against Sheriff Doughtre, the jail, or the medical staff, he must do so in a separate action; there is no claim for the court to address in this action.

## V. CONCLUSION

For the foregoing reasons, the Court grants the defendants' motion for summary judgment. A Final Judgment will be entered consistent with this Memorandum of Opinion. The Clerk of Court is **DIRECTED** to serve a copy of this Memorandum of Opinion upon the parties.

DONE and ORDERED this 26th day of September, 2013.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE